Hillsborough-southern judicial district
No. 94-235

STEPHEN BRONSTEIN & a.

v.

GZA GEOENVIRONMENTAL, INC. & a.

September 27, 1995

*Winer and Bennett*, of Nashua (*Gary A. Braun* and *David K. Pinsonneault* on the brief, and *Mr. Braun* orally), for the plaintiffs.

*Nelson, Kinder, Mosseau & Gordon, P.C.*, of Manchester (*E. Tupper Kinder* and *Peter G. Beeson* on the brief, and *Mr. Beeson* orally), for defendant GZA GeoEnvironmental, Inc.

*Bouchard & Mallory, P.A.*, of Manchester, for defendants Samuel Eastman Company, Inc., Stephen S. Alpert Industries, Inc., Stephen S. Alpert, and Casimir Griglik adopted in part the brief of GZA GeoEnvironmental, Inc.

THAYER, J. This is an interlocutory appeal from a ruling in the Superior Court (*Murphy*, J.) partially granting the summary judgment motion of defendants, GZA GeoEnvironmental, Inc. (GZA), and Samuel Eastman Company, Inc., Stephen S. Alpert Industries, Inc., Stephen S. Alpert, and Casimir Griglik (the Eastman defendants). We affirm and remand.

The parties agree to the following facts. On August 16, 1985, plaintiff Stephen Bronstein entered into a purchase and sale agreement for the purchase of property (the property) owned by the Samuel Eastman Company, Inc. Bronstein hired GZA to conduct an environmental survey of the property, which was completed on September 23, 1985. On November 15, 1985, Bronstein assigned his rights under the purchase and sale agreement to plaintiffs Samuel Bronstein, James Fokas and Herbert Miller (the BFM plaintiffs), who purchased the property on the same day.

On May 15, 1986, the BFM plaintiffs entered into an option agreement with James L. Cooney, Jr. for the sale of the property. An environmental firm hired by Cooney discovered hazardous waste contamination on the property, which it reported on July 29, 1986. Cooney declined to go forward with the sale, and since that time, the BFM plaintiffs have been unable to sell the property.

Bronstein and the BFM plaintiffs brought actions against the defendants on June 20, 1990, alleging damages for, *inter alia*, breach of contract, negligence, and negligent misrepresentation. GZA and the Eastman defendants moved for summary judgment, arguing that the plaintiffs' case was barred by the statute of limitations. GZA also argued that it did not owe a duty to the BFM plaintiffs. The trial court granted the motions in part and denied

them in part, ruling that the claims were not time barred, but that GZA owed no duty to the BFM plaintiffs.

The following issues are before us:

1. Whether plaintiffs' claims against GZA and the Samuel Eastman defendants, which are based on events occurring prior to July 1, 1986, but which were not discovered until July 29, 1986, are governed by the three-year statute of limitations in RSA 508:4, I, which became effective on July 1, 1986, and which applies "to all causes of action arising on or after July 1, 1986."

2. Whether, based on the facts appearing in the record below, GZA owed a duty in tort to the purchasers of the property — the BFM plaintiffs.

(Citations omitted.)

The first question on this appeal has been answered by our decision in *Conrad v. Hazen*, 140 N.H. 249, 665 A.2d 372 (1995). In that case, we held that "[a] cause of action . . . arises once all the necessary elements are present. In the case of torts, it would be when the causal negligence is coupled with harm to the plaintiff." *Id.* at 252, 665 A.2d at 375. In the case of a contract action, it would be when the breach occurs. *See Metropolitan Prop. & Liabil. Ins. Co. v. Walker*, 136 N.H. 594, 597, 620 A.2d 1020, 1022 (1993) (generally, statute of limitations begins to run in contract actions when the breach occurs). A breach of contract occurs when there is a "[f]ailure without legal excuse, to perform any promise which forms the whole or part of a contract." BLACK'S LAW DICTIONARY 188 (6th ed. 1990). While a party may be able to invoke the discovery rule if the injury is not discovered until a later time, *see Black Bear Lodge v. Trillium Corp.*, 136 N.H. 635, 638, 620 A.2d 428, 429–30 (1993), the action arises once there has been a breach. *Cf. Conrad*, 140 N.H. at 252, 665 A.2d at 375.

■ In this case, the plaintiffs' negligence and contract actions arose when GZA failed to identify the presence of hazardous waste on the site in September 1985. While the plaintiffs were not aware of the injury until July 29, 1986, the actions arose prior to the effective date of the three-year statute of limitations. *See id.*; RSA 508:4, I (1994). As a result, the trial court correctly ruled that the plaintiffs' actions against GZA and the Eastman defendants were governed by the pre-1986 six-year statute of limitations and, as a result, were not time barred. RSA 508:4, I (1983).

The second question presented by this interlocutory appeal is whether based on the facts appearing in the record below, GZA owed a duty in tort to the purchasers of the property, the BFM plaintiffs.

GZA was hired by plaintiff Stephen Bronstein to prepare an environmental assessment of the property. GZA never dealt directly with the BFM plaintiffs. The BFM plaintiffs, however, argue that GZA owed them a duty of care because it was reasonable that they would rely on GZA's environmental assessment of the property.

A duty of care arises if harm is a sufficiently probable consequence of an act that a careful person would avoid. *See Chiuchiolo v. New England & c. Tailors*, 84 N.H. 329, 332, 150 A. 540, 542 (1930) (duty of care arises "when the probable chances of injury are great enough to lead the ordinary [person] in the defendant's place to take measures to lessen or avoid the chances"). "Duty and foreseeability are inextricably bound together. The risk reasonably to be perceived defines the duty to be obeyed." *Corso v. Merrill*, 119 N.H. 647, 651, 406 A.2d 300, 303 (1979) (quotation omitted). GZA's duty, therefore, "is measured by the scope of the risk [that its] negligent conduct foreseeably entails." *Id.* (quotation omitted).

██ The BFM plaintiffs argue that GZA owed them a duty of care because GZA was in the business of providing information for the guidance of others. The plaintiffs rely on a provision of the RESTATEMENT (SECOND) OF TORTS, which provides that:

> (1) One who, in the course of his business . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care . . . in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
>> (a) by the person or one of a limited group of persons for whose benefit and guidance he *intends* to supply the information or *knows that the recipient intends to supply it*; and
>>
>> (b) through reliance upon it in a transaction that he *intends* the information to influence or *knows that the recipient so intends* or *in a substantially similar transaction.*

RESTATEMENT (SECOND) OF TORTS § 552, at 126–27 (1977) (emphasis added). Under the terms of the agreement between GZA and Bronstein, the report was prepared "for the exclusive use of [Bronstein]." Bronstein could convey the report to its lender and title insurer, but further dissemination to other parties was forbidden "except for the specific purpose, and to the specific parties alluded to above, without the prior written consent of GZA." The

report itself contained a similar limitation. It is clear, therefore, from the language in the agreement that GZA only intended to benefit Bronstein. While GZA knew that the report would be furnished to the lender, it was not reasonably foreseeable that Bronstein would furnish the information to the BFM plaintiffs, or that the BFM plaintiffs would rely on the report. GZA therefore owed no duty of care to the BFM plaintiffs. *Cf. Corso*, 119 N.H. at 651, 406 A.2d at 303 (individual is liable "only to those who are foreseeably endangered [and] only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous" (quotation omitted)).

The BFM plaintiffs argue that because GZA knew that Bronstein would transmit the report to its lender, it was reasonably foreseeable that the lender would transmit the report to other buyers. We disagree. The report itself contained the limitation on dissemination. The lender, therefore, was aware of the limitations. Additionally, it would not be reasonably foreseeable that information supplied to a lender by a potential purchaser would be transmitted by that lender to other purchasers. *See* RESTATEMENT (SECOND) OF TORTS, *supra* comment *h*, illus. 5, at 134.

We therefore affirm the trial court's denial of summary judgment based on the statute of limitations and its grant of summary judgment based on the absence of a duty owed by GZA to the BFM plaintiffs.

*Affirmed and remanded.*

HORTON, J., did not sit; the others concurred.