838 So.2d 679 (2003)
Phillip D. COOPER, Appellant,
v.
BRAKORA & ASSOCIATES, INC., a Florida corporation, Appellee.
No. 2D01-4685.
District Court of Appeal of Florida, Second District.
March 5, 2003.
William M. Midyette, III, of Peterson & Myers, P.A., Lakeland, for Appellant.
Edward F. Gagain, III, and Dale T. Golden of Marshall, Dennehey, Warner, Coleman & Goggin, Tampa, for Appellee.
FULMER, Judge.
Phillip Cooper appeals the dismissal with prejudice of his claim for negligent misrepresentation against Brakora & Associates, an appraiser hired by Barnett Bank to help it evaluate Cooper's mortgage loan application in conjunction with his purchase of residential property. The trial court based its dismissal on the lack of privity between these two parties. While dismissal was correct, we disagree with the trial court's reasoning. Thus we write to explain our conclusion that Cooper cannot state a claim for negligent misrepresentation against Brakora because the appraisal was intended to assist in the loan transaction, not in the purchase and sale transaction.
Cooper entered into a contract on February 5, 1998, to purchase a ten-year-old house.[1] The buyer and seller in this transaction *680 used a standard form contract for purchase and sale prepared jointly by the Florida Association of Realtors and The Florida Bar. Cooper agreed to pay approximately $165,000 for the house. The contract provided that the house was being purchased "as-is," and no amount was entered in the provision governing maximum repair costs.
Brakora was retained by Barnett Bank to perform an appraisal in conjunction with Cooper's application for a mortgage loan. Brakora viewed the house and prepared a Uniform Residential Appraisal Report on February 17, 1998. The appraisal report was submitted on a Freddie Mac Form 70 6-93, and it is typical of the appraisal obtained for virtually any residential mortgage in Florida. In the "Description of Improvements" section of the form, Brakora's report used one-word descriptions of the condition of the property and stated "drywall/good," "wood/good," and "2-Story/good." Concerning the quality of construction, it stated "FRMV/good." It described the overall condition as "good." Brakora made these entries for the purpose of determining an appraisal. It appraised the house at $173,000. The appraisal contained typical disclaimers and limitations including the statement: "The Appraiser assumes that there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable. The Appraiser assumes no responsibility for such conditions, or for engineering which might be required to discover such factors."
The purchase and sale contract had a typical termite clause that permitted Cooper to obtain an inspection. An inspection was performed on February 17, 1998, by Groover Exterminating Company. This inspection disclosed active subterranean termites, moisture damage adjacent to a fireplace, and roof leaks throughout the attic. As a result, the sellers treated the house for termites prior to the closing and arranged for Federated Construction & Homes, Inc., to repair the termite damage. Federated allegedly represented that it had fixed all of the termite damage. Cooper also retained Watson's Office Supply, d/b/a Home Services of America, to inspect this house prior to the closing. The inspector prepared a lengthy, detailed report but did not find any major problem with the house. Thereafter, Cooper closed on the real estate contract.
As alleged in his complaint, "approximately nine (9) months after the closing, Cooper discovered expansive termite damage throughout the residence which had occurred prior to the closing, and which necessitated approximately $50,000 to reasonably repair the termite damage." Cooper is seeking to recover this $50,000. He has sued the sellers for breach of contract and negligent misrepresentation; Federated for negligent misrepresentation and unfair trade practices; and Watson's Office Supply for breach of contract. None of these claims are involved in this appeal. For whatever reason, Cooper has not sued the termite inspector.
In addition to these parties, Cooper has sued Brakora & Associates, attempting to allege a claim for negligent misrepresentation as set forth in the Restatement (Second) of Torts § 552 (1977). Cooper has sued Brakora on the theory that "good" in the appraisal report was false information negligently supplied that caused him to sustain the $50,000 economic loss. He maintains that a non-negligent appraiser, during a standard inspection for a residential appraisal, would and should have found *681 the termite damage that he himself did not discover for nine months. The trial court dismissed this action against Brakora with prejudice because no privity existed between Brakora and Cooper. However, privity is not dispositive of a claim under section 552, which sets forth "the circumstances under which [certain professionals] may be held liable in negligence to persons who are not in contractual privity." First Fla. Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9, 14 (Fla.1990). Nevertheless, Cooper's claim against Brakora was properly dismissed because the detailed allegations in this case do not state a claim for negligent misrepresentation under section 552, which provides:
§ 552. Information Negligently Supplied for the Guidance of Others
(1) One who, in the course of his business, profession or employment, or any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.
Cooper argues that Brakora's duty to exercise reasonable care and competence in rendering the appraisal is extended to him under section 552 because Brakora knew that Cooper was the buyer of the property appraised and that he was a party to the loan transaction the appraisal was intended to influence. Thus, Cooper contends that he is within the "group of persons" the appraisal report was intended to benefit and guide. Brakora argues that although the report noted that the borrower was Cooper, the report was prepared for the benefit of the Bank, not Cooper. Brakora further argues that there are no allegations in Cooper's complaint that Brakora knew Barnett Bank intended for Cooper to rely on the appraisal or that Brakora knew Barnett Bank intended for Cooper to rely on the information contained in the report.
To support his claim, Cooper relies on First State Savings Bank v. Albright & Associates of Ocala, Inc., 561 So.2d 1326 (Fla. 5th DCA 1990), disapproved on other grounds, Garden v. Frier, 602 So.2d 1273 (Fla.1992). In Albright, an appraiser was retained by the purchasers of a real estate development project to provide an accurate appraisal of the project. The appraisal specifically stated that its objective was to estimate the fair market value of the project for mortgage financing. It was part of the information provided to the bank for its consideration of whether a loan secured by the property should be made. An update prepared by the appraiser was addressed directly to the president of the bank. The Albright court adopted section 552 as setting forth the circumstances under which an appraiser may be held liable for negligence to third *682 parties in the absence of privity and concluded that the bank did have a cause of action for negligence against the appraiser. Brakora argues that while Albright addresses the duties an appraiser owes to individuals with whom the appraiser is not in contractual privity, it is distinguishable and does not support Cooper's claim.
We agree that the facts in Albright do not support Cooper's claim. In the language of section 552, Brakora appraised Cooper's house to provide "information for the guidance of" the Bank and possibly Cooper in their "business transaction." But the business transaction was a secured loan, not the purchase of a house. It is noteworthy that the contract for purchase and sale in this case was not conditioned on an appraisal. It was merely conditioned on Cooper obtaining a commitment to finance $146,250 of the purchase price at customary terms. Barnett Bank retained Brakora to help it evaluate the risk that it might undertake by agreeing to loan this amount to Cooper. Thus, the appraisal was not created to help Cooper decide whether $165,000, which he had already contracted to pay, was a fair price. At best, it was created to help both the Bank and Cooper decide whether they should enter into a mortgagor/mortgagee relationship. If the Bank, for example, had agreed to issue the necessary commitment based on Cooper's good credit reputation, he could not have relied on the financing clause to avoid closing on this house even if an appraisal had evaluated the house at $100,000.
The tort theory announced in section 552 could easily overwhelm the law of contracts if it is not a limited theory. In a typical real estate transaction, the parties bargain for a distribution of risk and liability in exchange for monetary or other considerations, and this bargained-for exchange establishes some certainty that benefits both our legal system and the economy. This is particularly true for parties who are not the buyer, seller, or their immediate agents. Although the duties established by the law of negligence may play an appropriate role in commerce, section 552 will create great uncertainty unless the concept of a business transaction is narrowly defined. Accordingly, the "transaction" associated with an appraisal that is obtained purely for financing purposes after a contract for sale has been executed is the loan transaction. To permit section 552 to create a tort claim against a residential appraiser under the circumstances of this case would expand the meaning of "transaction" beyond that contemplated in the ordinary business relationship within which an appraisal for a lender is performed.
We conclude that Cooper cannot allege a section 552 claim against Brakora for the expense associated with repairing termite damage discovered after Cooper purchased his house. Assuming that Brakora negligently supplied false information indirectly to Cooper, this information was provided exclusively for a loan transaction, not for the transaction between the buyer and seller of the real estate. Cooper has not been economically damaged in his loan transaction with the bank. Accordingly, he has no viable claim against Brakora in this case.
Affirmed.
COVINGTON, J. and THREADGILL, EDWARD F., SENIOR JUDGE, Concur.
NOTES
[1] Although this case was dismissed on the pleadings, the pleadings are detailed and incorporate many relevant exhibits. Thus, the basic factual allegations, in the light most favorable to Cooper, are well established in this case.