IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO
——————————————

SOUTHWEST NON-PROFIT HOUSING CORPORATION,
AN ARIZONA NON-PROFIT CORPORATION,
*Plaintiff/Appellant,*

*v.*

JAMES E. NOWAK, II,
*Defendant/Appellee.*

——————————————

SOUTHWEST NON-PROFIT HOUSING CORPORATION,
AN ARIZONA NON-PROFIT CORPORATION,
*Plaintiff/Appellant,*

*v.*

KATHLEEN KNIFFEN, DBA KATHLEEN KNIFFEN APPRAISAL SERVICE,
*Defendant/Appellee.*

——————————————

SOUTHWEST NON-PROFIT HOUSING CORPORATION,
AN ARIZONA NON-PROFIT CORPORATION,
*Plaintiff/Appellant,*

*v.*

JOHN T. MARTELL, DBA JOHN T. MARTELL & ASSOCIATES,
*Defendant/Appellee.*

——————————————

Nos. 2 CA-CV 2013-0069, 2 CA-CV 2013-0097, and
2 CA-CV 2013-0098 (Consolidated)
Filed March 31, 2014

———————————————

Appeal from the Superior Court in Pima County
Nos. C20125381, C20124584, and C20124585
The Honorable Gus Aragón, Judge
The Honorable Leslie Miller, Judge

**AFFIRMED**

———————————————

COUNSEL

William E. Druke, Tucson

and

Quinn Law, PLLC
By Ian D. Quinn, Phoenix
*Counsel for Plaintiff/Appellant*

Snell & Wilmer, L.L.P.
By Jeffrey Willis and Katherine V. Foss, Tucson
and Mary-Christine Sungaila, Pro Hac Vice, Costa Mesa, California
*Counsel for Defendant/Appellee Nowak*

Gust Rosenfeld, P.L.C.
By Mark L. Collins and Robert M. Savage, Tucson
*Counsel for Defendants/Appellees Kniffen and Martell*

———————————————

**OPINION**

Judge Espinosa authored the opinion of the Court, in which
Presiding Judge Kelly and Judge Eckerstrom concurred.

———————————————

E S P I N O S A, Judge:

**¶1**        In consolidated cases, Appellant Southwest Non-Profit Housing Corporation (Southwest) appeals trial court decisions in favor of three defendant appraisers, James E. Nowak II (Nowak), Kathleen Kniffen (Kniffen), and John T. Martell (Martell), whom Southwest alleged had conducted appraisals negligently, resulting in lost home sales for Southwest.  For the following reasons, we affirm.

## Factual and Procedural Background

**¶2**        These cases arise from appraisals performed in connection with sales of residential properties.  In each case the sale was subject to the property appraising for the contracted sale amount.  In all three cases, the appraisals were appreciably lower than the properties' contracted sale prices.  As a result, the lender refused to lend the amounts the buyers requested for purchase, and the buyers ultimately canceled the sales.

**¶3**        The seller, Southwest, filed separate complaints against the three appraisers, asserting each had been negligent in performing his or her respective appraisal.  Nowak responded to the complaint with a motion to dismiss, and Kniffen and Martell filed motions for summary judgment.  All three relied on § 552 of the Restatement (Second) of Torts (1977) (hereinafter Restatement) in denying any liability for negligent misrepresentation.  The three motions were granted, and Southwest appealed.  The cases were consolidated in this court on Southwest's motion.  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

## Nowak Appraisal

**¶4**        In reviewing a trial court's decision to grant a motion to dismiss, we assume the truth of the facts asserted in the complaint. *Airfreight Exp. Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, ¶ 2, 158 P.3d 232, 235 (App. 2007).  Southwest purchased a residence on Desert Aire Drive in Tucson, invested $8,000 in rehabilitating the property, and then listed it for sale.  Southwest received three offers for the property and accepted the highest one for $94,000.

Southwest then entered into a sales contract with the prospective buyer, who applied for a loan to purchase the property. The lender required an appraisal to underwrite the loan and retained Nowak as the appraiser. Nowak appraised the property's value in June 2012 at $81,000. The lender then refused to fund the loan in the amount requested, and the prospective buyer withdrew from the contract.

¶5        Southwest thereafter filed a complaint against Nowak alleging negligent performance of the appraisal. Southwest asserted that Nowak had "breached his duty to all parties to the transaction" thus "caus[ing] the lender to decline to underwrite the loan and effectively cancel[] the sale." Nowak responded with a motion to dismiss, arguing he could not be liable for negligence under § 552 of the Restatement. The trial court granted the motion, ruling as a matter of law that the appraiser had no duty to Southwest. Southwest filed a motion for reconsideration, which the court denied.

### Kniffen and Martell Appraisals[1]

¶6        In reviewing a trial court's decision to grant summary judgment we view "the evidence and all reasonable inferences therefrom in the light most favorable to the party against whom summary judgment was granted." *Airfreight Exp. Ltd.*, 215 Ariz. 103, ¶ 2, 158 P.3d at 235. The parties largely agree on the facts underlying these appraisals but dispute their legal effect. In 2012, Southwest entered into a contract to sell a residence on Bayberry Street in Tucson for $170,000, contingent on the buyers obtaining loan approval supported by an appraisal of the property for at least

---

[1] Although the actions involving Kniffen and Martell were litigated separately below, we consider them together, as the facts in each case are similar and the filings by the parties and decisions by the court are substantially alike. When there are differences relevant to this decision, the two cases are discussed separately.

the purchase price.[2] The lender engaged Kniffen to appraise the property, and she estimated its fair market value as $150,000. Because the appraisal contingency was not satisfied, the prospective buyers attempted to renegotiate the contract. Southwest would not agree to a new contract, and the buyers withdrew from the purchase.

¶7 In a similar transaction, Southwest contracted to sell a residence located on Harvester Drive to a prospective buyer for $141,000. Again, the buyer's obligations were contingent upon the property appraising for at least the purchase price. The lender engaged Martell to appraise the Harvester Drive property, and his report appraised its fair market value at $127,000. The prospective buyer consequently exercised his right to cancel the contract.

¶8 Southwest brought actions against Kniffen and Martell alleging negligence relating to the appraisals. Both defendants moved for summary judgment, asserting Southwest was not the "intended user of the appraisal[s] and, in any event, took no acts in reliance thereon." Citing the appraisal certification, Southwest responded that the appraisers knew that "secondary market participants—parties other than the stated intended users—would be supplied [their] appraisal report[s]" and "so long as a party was provided the appraisal report with [the appraisers'] knowledge[,] they are entitled to rely on the same." The trial court entered summary judgment in favor of Kniffen and Martell.

---

[2]The appraisal contingency portion of the agreement states:

> Buyer's obligation to complete this sale is contingent upon an appraisal of the premises acceptable to lender for at least the purchase price. If the Premises fails to appraise for the purchase price in any appraisal required by lender, Buyer has five (5) days after notice of the appraised value to cancel this Contract and receive a refund of the Earnest Money or the appraisal contingency shall be waived.

## Discussion

### A. Nowak's Motion to Dismiss

**¶9**　　　Southwest asserts the trial court committed reversible error in dismissing its complaint "on the sole ground that Southwest had executed the sales agreement 'before the appraisal was commissioned,'" observing that § 552 of the Restatement imposes liability "when the provider of professional information knows the specific transaction or type of transaction involved and intends to guide and benefit those involved in the transaction."

**¶10**　　　We review dismissal of a complaint under Rule 12(b)(6), Ariz. R. Civ. P., *de novo. Coleman v. City of Mesa*, 230 Ariz. 352, ¶ 7, 284 P.3d 863, 866 (2012). In doing so, we look only to the complaint, assuming the truth of all well-pled factual allegations and indulging all reasonable inferences. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, ¶ 7, 189 P.3d 344, 346 (2008). Although we "uphold dismissal only if the plaintiffs would not be entitled to relief under any facts susceptible of proof in the statement of the claim," *Mohave Disposal, Inc. v. City of Kingman*, 186 Ariz. 343, 346, 922 P.2d 308, 311 (1996), we may affirm if the dismissal is correct for any reason, *Dube v. Likins*, 216 Ariz. 406, n.3, 167 P.3d 93, 104 n.3 (App. 2007). Moreover, "we do not accept as true allegations consisting of conclusions of law, inferences or deductions that are not necessarily implied by well-pleaded facts, unreasonable inferences or unsupported conclusions from such facts, or legal conclusions alleged as facts." *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, ¶ 4, 121 P.3d 1256, 1259 (App. 2005).

**¶11**　　　To state a claim for relief for negligent misrepresentation, including those presented here—that the defendants were negligent in their appraisals—a plaintiff must allege, among other elements, that he was owed a duty of care by the defendant. *See Belen Loan Investors, LLC v. Bradley*, 231 Ariz. 448, ¶ 8, 296 P.3d 984, 989 (App. 2012). We address *de novo* the purely legal issue of whether the trial court correctly ruled that Nowak owed Southwest no such duty as a matter of law. *Id.*

**¶12**        To determine the scope of an appraiser's obligations to third parties we look to Restatement § 552.  *See Belen Loan Investors, LLC*, 231 Ariz. 448, ¶ 10, 296 P.3d at 989.  An appraiser has liability for losses suffered "by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it."  This liability is limited to those transactions "that he intends the information to influence or knows that the recipient so intends."  Restatement § 552(2).  The appraiser need not know the specific identity of the third-party recipient when the information is supplied, so long as the appraisal is intended to reach and influence a particular type of individual or class of persons.

**¶13**        Section 552, however, does not open liability to an unlimited class of individuals who are merely "foreseeable."  The appraiser is not liable to all whom "might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it."  Restatement § 552 cmt. h; *see also Sage v. Blagg Appraisal Co.,* 221 Ariz. 33, n.7, 209 P.3d 169, 174 n.7 (App. 2009) (foreseeability ordinarily creates no duty of care).  As the Restatement observes, the "risk of liability to which the supplier subjects himself by undertaking to give the information . . . is vitally affected by the number and character of the persons, and particularly the nature and extent of the proposed transaction."  Restatement § 552 cmt. h.  This court also has noted "there are good reasons to conclude that a professional who provides information should not owe a duty of care to anyone who happens to receive the information."  *Sage*, 221 Ariz. 33, n.9, 209 P.3d 175 n.9.

**¶14**        In its complaint, Southwest stated that Nowak "owe[d] a particular duty of care in performing h[is] professional duties."  It asserted that by "agreeing to complete the Appraisal[,] Nowak attained a duty to the lender and the borrower for whom the Appraisal was to benefit," and that "by failing to properly utilize data readily available to him . . . Nowak breached his duty to all parties of the transaction."  And finally, Southwest maintains that "[b]y breaching his duty, Nowak caused the lender to decline to underwrite the loan and effectively cancelled the sale of the Property."

¶15    The trial court found that under the facts pled, and the requirements of § 552, Nowak owed no duty to Southwest. The court noted § 552 required Southwest to show that it was "part of a limited group of persons or entities specifically intended to be benefitted or guided by the appraiser" and that the "appraiser intend[ed] to supply his appraisal to the seller or kn[ew] that the lender, as the intended recipient of the appraisal, intend[ed] to supply it to the seller." It also noted the requirement that "the appraiser intended that the appraisal information would influence the seller, or [knew] that the lender intend[ed] to use the appraisal to influence the seller." Expressly "[l]ooking at the language in Plaintiff's Complaint," the court found it "clear that the sales agreement had been made before the appraisal was commissioned," and thus found "no reason to believe that the appraiser intended to influence the sale."

¶16    Southwest asserts the trial court's holding "put[] the proverbial 'cart before the horse' by requiring an appraisal before the sales agreement is signed." According to Southwest, "Nowak could only become 'manifestly aware' of the appraisal's purpose after Southwest signed the agreement," and contends that "Nowak's duty of care arose only after, not before, the sales agreement was executed." Southwest's complaint, however, is devoid of support for the claim that Nowak intended at any point to influence Southwest, thereby assuming a duty of care to it.[3]

---

[3]Southwest did assert generally that "Nowak breached his duty to all parties of the transaction." However, as a conclusion of law not necessarily implied by the facts pled, we need not accept the assertion as true. *Cullen,* 218 Ariz. at 419, 189 P.3d at 346 ("mere conclusory statements are insufficient to state a claim upon which relief can be granted"); *Jeter,* 211 Ariz. 386, ¶ 4, 121 P.3d at 1259 ("we do not accept as true allegations consisting of conclusions of law . . . not necessarily implied by well-pleaded facts . . . or legal conclusions alleged as facts"). Further, Nowak's duty is described in the complaint as arising at the time he agreed to perform the appraisal and that duty was to "the lender and the borrower for whom the Appraisal was to benefit."

**¶17**      In applying § 552, "[i]ntent to influence is a threshold issue." *Bily v. Arthur Young & Co.*, 834 P.2d 745, 771 (Cal. 1992); *see* Restatement § 552, cmt. j. ("the liability of the maker of a negligent misrepresentation is limited to the transaction that he intends, or knows that the recipient intends, to influence, or to a substantially similar transaction"). Under the facts as pled, it is undisputed that Southwest's contract with its buyer preceded the appraisal and that the appraisal was performed for the lender. As such, the trial court could not reasonably find that Nowak had intended to influence Southwest, which had already committed to the sale price.[4] *See Wingate Land, LLC v. ValueFirst, Inc.*, 722 S.E.2d 868, 870 (Ga. Ct. App. 2012) (no attempt to induce seller of property to rely where appraiser performed appraisal for lender after seller and buyer entered into sales contracts for previously agreed upon prices).[5]

---

[4]In its reply brief, Southwest argues it was not contractually bound at the time it executed the sales agreement because of the appraisal contingency. However, that provision, apparently the same as in Kniffen's and Martell's cases and quoted above, protects buyers by allowing them to cancel the contract if the appraisal is lower than the contract price. It provides no such cancellation rights to the seller. *Compare Sage*, 221 Ariz. 33, ¶¶ 2-3, 24, 209 P.3d at 170, 175 (appraiser owed duty of care to homebuyer where buyer paid for appraisal, had right to appraisal, and contract allowed buyer to forego sale if appraisal unfavorable). While it might be foreseeable that buyers exercising their rights pursuant to this provision would show an appraisal to the seller, foreseeability alone has been deemed insufficient to create a duty on the part of the information provider. *See* Restatement § 552 cmt. h; *Sage*, 221 Ariz. 33, n.7, 209 P.3d at 174 n.7; *Hoffman v. Greenberg*, 159 Ariz. 377, 379, 767 P.2d 725, 727 (App. 1988).

[5]Southwest relies heavily on a Washington case, *Schaaf v. Highfield*, for the proposition that liability under § 552(2)(a) extends "to those involved in the transaction that triggered the appraisal report, including, but not necessarily limited to, the buyer and the seller." 896 P.2d 665, 670 (Wash. 1995). However, the language in *Schaaf* relating to an appraiser's duty to a "seller" was mere dicta, as the case involved an appraiser's duty to a buyer.

Because no reasonable interpretation of the facts alleged allows for a finding that Nowak intended to influence Southwest, *see Cullen*, 218 Ariz. 417, ¶ 14, 189 P.3d at 347 (courts consider only well-pled facts and reasonable interpretations of those facts), dismissal was warranted, *see Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (dismissal proper under Fed. R. Civ. P. 12(b)(6) when complaint fails to allege sufficient facts to support legal claim), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 530 U.S. 544 (2007); *see also Waltner v. JPMorgan Chase Bank, N.A.*, 231 Ariz. 484, ¶ 18, 297 P.3d 176, 180 (App. 2013) (applying Fed. R. Civ. P. 12(b)(6) analysis to Ariz. R. Civ. P. 12(b)(6)).

¶18　　　Southwest also contends there is a factual issue to be determined, specifically, "who Nowak intended his appraisal to benefit and guide in the transaction." Again, however, nowhere in its complaint does Southwest assert that Nowak intended to benefit and guide it by his appraisal. Rather, the complaint states "[i]n agreeing to complete the Appraisal[,] Nowak attained a duty to the lender and the borrower for whom the Appraisal was to benefit." In considering a motion to dismiss, we are limited to well-pled facts and cannot speculate about hypothetical ones that might entitle a party to relief, *Cullen*, 218 Ariz. 417, ¶ 14, 189 P.3d at 347, and the trial court could properly decline to hypothesize about Nowak's intentions notwithstanding Southwest's efforts to articulate its claim. The complaint against Nowak was properly dismissed as a matter of law.

## B. Kniffen and Martell's Motions for Summary Judgment

¶19　　　When a party appeals a summary judgment decision, our review is *de novo* to determine whether the trial court correctly applied the law. *Tenet Healthsystem TGH, Inc. v. Silver*, 203 Ariz. 217, ¶ 5, 52 P.3d 786, 788 (App. 2002). We also review *de novo* issues of contract interpretation. *Id.*

¶20　　　In its ruling on the motion for summary judgment, the trial court rejected Southwest's argument that it was owed a duty because its real estate broker was a "secondary market participant" under paragraph twenty-one of the appraiser's certification. That paragraph identifies the parties to whom the "lender/client may

disclose or distribute this appraisal report" without having to obtain the appraiser's consent, [6] and does not include the "seller." Southwest argued that its broker's implied inclusion on this list of permissible recipients made it an intended recipient as well and created a duty to Southwest on the part of Kniffen and Martell.

**¶21** On appeal, Southwest no longer advances its "secondary market participant" argument, but instead contends the court erred in effectively concluding Southwest had waived Kniffen and Martell's tort liability to it based on the fact that paragraph twenty-one did not include the term "seller" in the list of those intended to receive the appraiser's report. Southwest argues, "the omission of [the term] 'seller' from paragraph 21 in the[] Appraiser's Certifications raises a genuine issue of material fact as to whether Southwest waived its tort liability against the appraisers and precludes summary judgment." Southwest further argues that "[f]ederal law charges an appraiser with knowledge that the recipient of an appraisal, such as a lender, must supply the appraisal

---

[6]Paragraph twenty-one states in relevant part:

> The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party . . . .

to a person with an interest in the real estate transaction, such as the seller."[7]

**¶22**          Southwest asserts that paragraph twenty-one of the Appraiser's Certifications for Kniffen and Martell constitutes a waiver of tort liability, which contravenes public policy unless the waiver was freely and fairly made.  Southwest maintains that because "it did not waive its tort remedies against Martell and Kniffen," any such waiver was not "knowingly bargained for," and "[w]ithout such evidence, a genuine issue of material fact exists as to whether the omission of the term 'seller' from paragraph 21 constitutes a waiver of Southwest's tort claims against Martell and Kniffen and precludes summary judgment."[8]

---

[7]Neither of these arguments was made to the trial court and, as urged by Kniffen and Martell, may be considered waived.  *See Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, ¶ 18, 169 P.3d 120, 125 (App. 2007) ("Generally, arguments raised for the first time on appeal are untimely and deemed waived.").  But, as Southwest observes, the waiver rule is one of procedure not jurisdiction, *id.*, and is subject to our discretion.  Such discretion may be properly exercised when "the facts are fully developed, undisputed, and the issue can be resolved as a matter of law" or when the question is one of statewide public importance.  *State ex rel. Horne v. Campos*, 226 Ariz. 424, n.5, 250 P.3d 201, 205 n.5 (App. 2011); *see also Stokes v. Stokes*, 143 Ariz. 590, 592, 694 P.2d 1204, 1206 (App. 1984).  We do so here where Kniffen and Martell addressed the new arguments in their response, the facts are undisputed, and the issues may be resolved as a matter of law.

[8] At oral argument, Kniffen and Martell observed that Appraisal Certification paragraph twenty-one identifies those who may receive copies of the appraisals without obtaining the appraiser's consent and pointed out that paragraph twenty-three limits who can rely on the appraisals.  That paragraph states: "The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any

**¶23**         The appraisal engagements, however, were solely between the appraiser and the lender/client.  Southwest was not a party to the agreement or the intended user of the appraisal.  A waiver is an intentional and voluntary relinquishment of a known right.  *Am. Cont'l Life Ins. Co. v. Ranier Constr. Co.*, 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980).  Southwest simply had not acquired a right that it might have waived.  *Cf.* Restatement (Second) of Contracts § 315 (1981) (incidental beneficiary acquires by virtue of promise no right against promisor or promisee).

**¶24**         Restatement § 552 provides that a negligent supplier of misinformation is liable "only to those persons for whose benefit and guidance it is supplied."  Restatement § 552 cmt. h.  The maker of the representation may be liable when he intends the representation:

> to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it.

*Id.*  The language of paragraph twenty-one evidences Kniffen's and Martell's intent to limit the distribution of the appraisals to particular classes of people, none of which included the seller of the property.  Southwest was thus part of the "much larger class" who sooner or later might have access to the information and foreseeably rely on it.  *Id.*  As such, Kniffen and Martell did not owe Southwest any duty and summary judgment was appropriate.  *See Kuehn v. Stanley*, 208 Ariz. 124, ¶ 15, 91 P.3d 346, 351 (App. 2004).

---

mortgage finance transaction that involves any one or more of these parties."  Because Southwest specifically cited paragraph twenty-one in its brief and the analysis remains the same under both paragraphs, as neither references a "seller," we limit our discussion to paragraph twenty-one.

¶25        Southwest alternatively argues that a recent federal law, the Dodd-Frank Act, caused Kniffen and Martell to "know" that Southwest would receive their appraisals. Southwest points to 15 U.S.C. § 1639e which sets out requirements for independent appraisals. Generally, the statute forbids "a person with an interest in the underlying transaction" from attempting to influence the appraised value assigned. 15 U.S.C. § 1639e(b). Exempted from this prohibition, however, are enumerated parties including "any other person with an interest in a real estate transaction" who requests that an appraiser (1) consider additional appropriate property information; (2) provide further detail for the appraiser's value conclusion; and (3) correct errors in the appraisal report. 15 U.S.C. § 1639e(c). Citing this provision, Southwest argues "[t]he Act thus charges an appraiser with the knowledge that a seller will receive the appraisal when a dwelling secures the buyer's credit."

¶26        Kniffen and Martell respond that nothing in the statutory language of 15 U.S.C. § 1639e requires disclosure of an appraisal to a seller under the facts at issue here. We agree. The federal provision allows a variety of parties with an interest in a real estate transaction to request that an appraiser consider more information, provide further detail and correct any errors. It does not, however, impose any affirmative requirements regarding the distribution of appraisals or duties owed to third parties. Accordingly, Southwest's claim that § 1639e provides a basis for imputing knowledge to Kniffen and Martell is unpersuasive.

### C. Reliance

¶27        Finally, assuming arguendo that some duty was nevertheless owed to Southwest by Kniffen and Martell, we address Southwest's argument that the trial court erred by determining as a matter of law that Southwest did not rely on their appraisals. Southwest observes that Restatement § 552 subjects a provider of professional information to liability "for pecuniary loss caused to others by their justifiable reliance upon the information," and cites at length our supreme court's guidance in *St. Joseph's Hospital & Medical Center v. Reserve Life Insurance Co.*, relating to whether a misrepresentation is material for purposes of showing that reliance was justifiable. 154 Ariz. 307, 316, 742 P.2d 808, 817 (1987).

**¶28**        Before justifiable reliance can be found, however, there must be some evidence in the record of reliance. Southwest is a corporation in the business of purchasing, rehabilitating, and reselling properties. When the prospective buyers of the Bayberry Street property sought to reduce the contract price based on Kniffen's appraisal, Southwest's president, "[u]sing [his] own analysis and upon the advice of [his] agent," rejected the offer. Southwest later sold the residence to another buyer. Similarly, after receiving Martell's appraisal, Southwest challenged it by formally asking for reconsideration of the appraisal's property valuation. When the prospective buyer cancelled the contract upon learning of Southwest's challenge, Southwest remarketed the property and sold it to another buyer.

**¶29**        As asserted by Kniffen and Martell, the record does not support Southwest's assertions of reliance. Southwest doubted the accuracy of both appraisals; in Martell's case, it asked for the appraisal to be reconsidered, and in Kniffen's case, refused to lower the contract price of the property. There is no indication Southwest relied on either appraisal in acting or refraining from action. *See Western Techs., Inc. v. Sverdrup & Parcel, Inc.*, 154 Ariz. 1, 3, 739 P.2d 1318, 1320 (App. 1986) (party injured by negligent misrepresentation "must have relied on the information the defendant supplied"); *see also Ness v. Western Sec. Life Ins. Co.*, 174 Ariz. 497, 502, 851 P.2d 122, 127 (App. 1992) (no reliance where plaintiff did not accept defendants' statements that he lacked disability insurance coverage, consulted attorney, and ultimately brought action against insurer); *Wingate Land, LLC*, 722 S.E.2d at 870 (no reliance where plaintiff seller asserted information in appraisals was false); *cf.* Restatement § 537 (recipient of fraudulent misrepresentation may recover if he relies on misrepresentation in acting or refraining from action and reliance justifiable).[9]

---

[9] In its reply brief, Southwest argues "*Ness* is inapposite because it involved, among other claims, a claim of common law fraud, rather than a claim of negligent misrepresentation" and the requirements of those torts "differ significantly." Southwest asserts that fraud requires detrimental reliance while negligent

¶30 Southwest also contends it relied on the appraisals when it ultimately sold the properties to new buyers for reduced amounts. The record, however, again does not support this assertion. By affidavit, Southwest attested that in remarketing the property after the contracts were cancelled, it "was mindful that [its] agent would need to explain to interested buyers that the property was back on the market because [it] failed to appraise for the prior contract price," and Southwest was "generally aware that a negative association attaches to properties under these circumstances." Southwest then reported that it had sold the Harvester Drive house for $136,000 and the Bayberry Street house for $152,000.[10] Southwest did not assert that it had relied on the appraisals in selling the properties to subsequent buyers. Further, Southwest ultimately sold the Harvester Drive house for $9,000 more than Martell's appraisal and the Bayberry Street house for $2,000 more than Kniffen's appraisal. For all these reasons, Southwest has not demonstrated a genuine factual dispute as to its reliance.

---

misrepresentation requires only justifiable reliance. Both claims, however, require "reliance" and in *Ness* we found none and, consequently, no "reasonable reliance." *Ness*, 174 Ariz. at 502, 851 P.2d at 127. Here, as well, we find no evidence of reliance and thus no need to proceed to the question whether reliance was reasonable (based on the complaining party's information and intelligence) and justifiable (depending on whether the misrepresentation is material). *St. Joseph's Hosp. & Med. Ctr.*, 154 Ariz. at 316, 742 P.2d at 817. We observe in passing that our supreme court in *St. Joseph's Hospital* uses "reasonable" and "justifiable" somewhat interchangeably in its discussion of reliance. *Id.*

[10] Southwest first listed the Harvester Drive property for $135,000 and the Bayberry Street property for $165,000. Martell valued the Harvester Drive property at $127,000 and Kniffen valued the Bayberry Street property at $150,000. Southwest did not provide the relisting prices of the properties following the disputed appraisals.

## Disposition

¶**31**        Based on the foregoing, the trial courts' dismissal of the negligence claim alleged against Nowak and grant of summary judgment in favor of Kniffen and Martell are affirmed.