IN THE
# ARIZONA COURT OF APPEALS
## DIVISION TWO

———————————————

KAROLINA BARRERA,
*Petitioner,*

*v.*

SEDONA POINTE LLC,
*Respondent.*

No. 2 CA-SA 2026-0011
Filed June 12, 2026

———————————————

Special Action Proceeding
Pima County Cause No. C20257727
The Honorable Jeffrey T. Bergin, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

———————————————

COUNSEL

Southern Arizona Legal Aid Inc., Tucson
By Kristin Fitzharris
*Counsel for Petitioner*

Hull, Holliday & Holliday P.L.C., Phoenix
By Matthew R. Schlabach
*Counsel for Respondent*

Zona Law Group P.C., Scottsdale
By Scott A. Baluha
*Counsel for Amicus Curiae Manufactured Housing Communities of Arizona*

Statecraft PLLC, Phoenix
By Kory Langhofer and Thomas Basile
*Counsel for Amicus Curiae Arizona Multihousing Association*

Community Legal Services, Phoenix
By Pamela Bridge

DNA People's Legal Services, Flagstaff
By Michael Elliott

and

William E. Morris Institute for Justice, Phoenix
By Brenda Muñoz Furnish, Michelle Johnson Simpson, and Andrew P. Schaffer
*Counsel for Amici Curiae Community Legal Services, DNA People's Legal Services, and William E. Morris Institute for Justice*

---

**OPINION**

---

Judge O'Neil authored the opinion of the Court, in which Presiding Judge Gard and Judge Eckerstrom concurred.

---

O' N E I L, Judge:

¶1        This special-action proceeding concerns the ongoing application of 15 U.S.C. § 9058(c)(1), a provision of the federal Coronavirus Economic Stabilization (CARES) Act,[1] which placed a moratorium on filing eviction actions for nonpayment of rent and directed that landlords must give tenants a thirty-day notice before requiring them to vacate rental property.  Karolina Barrera challenges the superior court's judgment affirming her eviction.  She argues the justice and superior courts erroneously denied her motion to dismiss the action because the notice she received did not allow her thirty days to cure her nonpayment of rent.  For the reasons that follow, we accept special-action jurisdiction and affirm.

**Factual and Procedural Background**

¶2        In 2025, Barrera was leasing a home at Sedona Pointe Apartments, a property covered by the CARES Act.  On February 1, Sedona Pointe delivered to Barrera a notice informing her that she had breached her lease by failing to pay rent and that it intended to terminate her rental

---

[1] 15 U.S.C. §§ 9001-9141.

agreement. Sedona Pointe demanded that Barrera "cure this default within five (5) calendar days of [her] receipt of this notice and/or return possession of the premises not later than 30 days from the date of this notice to avoid being evicted by the Constable/Sheriff." The notice further provided that "the filing of an eviction lawsuit against [her] by [her] landlord is imminent" and that "[c]ertain properties are covered by special rules which require a 30-day notice before the tenant can be physically removed from the community." It also stated that to "resolve this matter prior to the initiation of legal action," Barrera "**must** contact [her] landlord immediately and deliver the full sum due or sign a partial payment agreement, if agreed to in writing by [her] landlord."

¶3 On March 7, thirty-four days after giving Barrera notice, Sedona Pointe filed its eviction complaint in Pima County Justice Court. Barrera moved to dismiss the action, arguing the notice was insufficient because it did not expressly inform her that under the CARES Act she had a thirty-day window in which to cure her nonpayment of rent.

¶4 After a bench trial, the justice court denied Barrera's motion to dismiss. The court noted that Sedona Pointe had waited thirty days between giving Barrera notice of its intent to evict and filing the eviction action, consistent with the procedure set by *Scroggins v. 45th Street Senior Apartments LLC*, a prior Pima County Superior Court decision on which Barrera relied in her motion to dismiss. That order recognized a three-way split between states treating § 9058(c) as requiring landlords to give tenants thirty days to cure or vacate, those allowing landlords to file eviction actions before the expiration of thirty days so long as no eviction occurs until thirty days have passed from the landlord's notice, and those reasoning that § 9058(c) no longer affects state eviction laws. Reasoning that Barrera could have cured her nonpayment any time before entry of special detainer judgment under A.R.S. § 33-1368(B), the court implicitly concluded the notice here complied with § 9058(c). It then entered judgment against Barrera.

¶5 Barrera appealed to the superior court, arguing that the justice court incorrectly characterized the thirty-day period set forth in § 9058(c) as requiring a landlord only to wait thirty days between giving notice and filing an eviction action. Instead, Barrera contended, *Scroggins* requires landlords to provide tenants with thirty days to cure rental nonpayment and to expressly notify tenants of this right in an eviction notice. The superior court affirmed, reasoning that "[t]he only change that the CARES Act" imposes on § 33-1368(B) is to prohibit a landlord from filing a special

detainer complaint before thirty days after it gives notice of nonpayment. The court further concluded that "there is no requirement that the initial notice of nonpayment and intent to terminate must also inform the tenant of their right to have the rental agreement reinstated at any time prior to judgment." This petition for special action followed.

## Jurisdiction

**¶6** Special-action review is discretionary "and may be accepted only if the remedy by appeal is not equally plain, speedy, and adequate." Ariz. R. P. Spec. Act. 2(b)(2). Here, special-action review is appropriate because no direct appeal lies from a superior court's review of a justice court's ruling in an eviction action. *See* A.R.S. § 22-375(A), (B) (except under circumstances not present here, "there shall be no appeal from the judgment of the superior court given in an action appealed from a justice of the peace or a municipal court"); *Secure Ventures, LLC v. Gerlach*, 249 Ariz. 97, ¶¶ 1, 4 (App. 2020) (accepting jurisdiction in forcible detainer action "because appellate relief was exhausted when the matter, which originated in the justice court, was appealed to the superior court"). Additionally, this appeal addresses a matter of first impression in Arizona's appellate courts: whether the notice requirements in § 9058(c) remain in effect now that the federal eviction moratorium established by § 9058(b) has expired. *See* Ariz. R. P. Spec. Act. 12(b)(3). The parties agree that the notice provision of § 9058(c) has been applied inconsistently in counties across the state, making this question a matter "of statewide importance." Ariz. R. P. Spec. Act. 12(b)(4). Further, Barrera presents primarily questions of law — whether and to what extent the CARES Act continues to direct a landlord's notice of eviction. *See Ariz. Pres. Found. v. Pima Cmty. Coll. Dist. Bd.*, 259 Ariz. 539, ¶ 10 (App. 2025). For these reasons, we accept special-action jurisdiction.[2]

---

[2]At oral argument, counsel for Sedona Pointe suggested we lack jurisdiction to consider whether § 9058(c) remains in effect because Barrera did not squarely raise it in the justice or superior courts. But the justice court noted the precise issue presented here — whether and how § 9058(c) bears on state eviction notice provisions. In any event, issue preservation is a matter of waiver, not of jurisdiction. Waiver is a discretionary doctrine. *See Sw. Non-Profit Hous. Corp. v. Nowak*, 234 Ariz. 387, n.7 (App. 2014). Given the compelling reasons to accept special-action jurisdiction over this issue of statewide importance, we decline to apply the waiver doctrine here. *See id.*

## Discussion

¶7      The Arizona Residential Landlord and Tenant Act allows a landlord to file an action to terminate a rental agreement if a tenant "fails to pay rent within five days after written notice by the landlord of nonpayment and the landlord's intention to terminate the rental agreement." § 33-1368(B). But in March 2020, Congress temporarily halted new eviction filings based on nonpayment of rent as part of the CARES Act "[t]o provide emergency assistance and health care response for individuals, families, and businesses affected by the 2020 coronavirus pandemic." S. 3548, 116th Cong. (2020) (as introduced by Senate; enacted as H.R. 748, Pub. L. 116-136, Mar. 27, 2020, 134 Stat. 281). The relevant portions of § 9058, entitled "Temporary moratorium on eviction filings," provide:

> **(b) Moratorium**
>
> During the 120-day period beginning on March 27, 2020, the lessor of a covered dwelling may not—
>
>> **(1)** make, or cause to be made, any filing with the court of jurisdiction to initiate a legal action to recover possession of the covered dwelling from the tenant for nonpayment of rent or other fees or charges; . . . .
>
> **(c) Notice**
>
> The lessor of a covered dwelling unit—
>
>> **(1)** may not require the tenant to vacate the covered dwelling unit before the date that is 30 days after the date on which the lessor provides the tenant with a notice to vacate; and
>
>> **(2)** may not issue a notice to vacate under paragraph (1) until after the expiration of the period described in subsection (b).

When the temporary moratorium expired, contrary to Arizona's five-day notice requirement, the CARES Act required thirty days between an

eviction notice and the date when a landlord could "require the tenant to vacate." *See* §§ 9058(c), 33-1368(B).

¶8        The moratorium on eviction filings has long since expired. § 9058(b). This special action requires us to consider whether the thirty-day waiting period provided by § 9058(c)(1) continues to apply despite the moratorium's expiration. *See Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 760 (2021). "We interpret statutes 'in view of the entire text, considering the context and related statutes on the same subject.'" *Planned Parenthood Ariz. Inc. v. Mayes*, 257 Ariz. 137, ¶ 15 (2024) (quoting *Nicaise v. Sundaram*, 245 Ariz. 566, ¶ 11 (2019)). When interpreting an ambiguous statute, "we may use alternative methods of statutory construction, including examining the rule's historical background, its spirit and purpose, and the effects and consequences of competing interpretations." *Id.* ¶ 17. "We also may consider a statement of legislative intent, including a construction provision, in discerning the meaning of a statute." *Id.* ¶ 16. "We review questions of statutory interpretation de novo." *State v. Marner*, ___ Ariz. ___, ¶ 5, 583 P.3d 53, 55 (2026).

¶9        There are at least two plausible ways of reading § 9058(c)'s notice provision. Barrera reads the thirty-day waiting period as a continuing requirement that applies independently of the moratorium. Sedona Pointe contends that the requirement is contextually limited to evictions that were affected by the moratorium and has thus expired.

¶10       Barrera's argument is straightforward. Although § 9058(b) provides a clear expiry for the eviction moratorium, § 9058(c)(1) contains no express expiration date for the thirty-day notice requirement. She asserts, therefore, the notice requirement must continue indefinitely, absent Congressional action.[3] *See Lomax v. Ortiz-Marquez*, 590 U.S. ___, 600, 140 S. Ct. 1721, 1725 (2020) (court "may not narrow a provision's reach by inserting words Congress chose to omit"); *see also City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, ¶ 13 (2019) (identifying interpretive canon, "the expression of one item implies the exclusion of others"). The simplicity of this interpretation has persuasive force, especially when reading § 9058(c)(1) in isolation, yet it has flaws when considered within the statute's larger context. The statutory language and structure give

---

[3]Notably, in February 2026, a bill was reported in the U.S. House of Representatives that would strike subsection (c) altogether. *See* H.R. Rep. No. 119-521 (2026).

important reasons to infer that the notice requirement is tethered to the eviction moratorium in § 9058(b).

¶11        First, § 9058(c)(1) is textually linked to subsection (c)(2), which provides that a landlord "may not issue a notice to vacate under [(c)](1)" during the temporary moratorium "described in subsection (b)." The moratorium under § 9058(b) prohibits landlords from filing an eviction action for nonpayment for a defined period, while § 9058(c)(2) prohibits issuing a notice to vacate during that same defined period. And § 9058(c)(1) specifies that the notice, once issued, must allow thirty days to vacate. This suggests that § 9058(c)(1) refers specifically to evictions affected by the moratorium under § 9058(b). In fact, reading it otherwise would render § 9058(c)(2)—written as part of a complete sentence along with § 9058(c)(1)—a dead letter, textually attaching an ongoing notice requirement to an expired temporary moratorium. This reading would "fracture the statute's internal logic." *Carson v. Gentry*, 574 P.3d 205, ¶ 71 (2025) ("[A] statute should be read 'to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.'" (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012))).

¶12        There is another reason to understand the notice requirement as attached to the eviction moratorium. Just as § 9058(c)(1) does not specify an expiration date, it also does not specify that the thirty-day notice requirement is limited to evictions for nonpayment of rent. The moratorium, of course, applied only to evictions for nonpayment and did not affect eviction actions on other grounds. § 9058(b). If § 9058(c)(1) was untethered from the moratorium, then the thirty-day notice requirement would apply to *all* evictions, and we would seemingly be compelled to read § 9058(c)(2) as independently prohibiting eviction notices even on grounds to which the moratorium did not apply. In other words, although § 9058(b)'s moratorium did not prevent landlords from filing eviction actions for reasons other than nonpayment, Barrera's reading of § 9058(c)(2) would have prevented them from issuing the requisite notice before doing so. This seems an unlikely and, indeed, unfeasible result, and it further indicates that the notice requirement is limited to eviction actions affected by the moratorium.

¶13        Lastly, the statute's title also informs its meaning. *See Grand Canyon Tr. v. Ariz. Corp. Comm'n*, 210 Ariz. 30, ¶ 44 (App. 2005) ("Although a title is not part of a law itself, we may look to it for guidance in interpreting a statute."). The title identifies the statute as establishing a "moratorium on

eviction filings," specifying that the moratorium was "[t]emporary." § 9058. The title thus places the moratorium as the central focus and emphasizes its temporary effect. Although not dispositive, this supports a reading of the statutory language that contextually relates the notice requirement to eviction actions subject to the moratorium. *See Grand Canyon Tr.*, 210 Ariz. 30, ¶ 44.

¶14 Barrera's reading of § 9058(c)(1) is textually plausible, but the subsection's language is ambiguous. *See Marner*, ___ Ariz. ___, ¶ 5, 583 P.3d at 55. This ambiguity is reflected in significant disagreement among state courts nationwide both as to whether § 9058(c) expired along with § 9058(b) and the extent of its reach. Most state courts have concluded that § 9058(c)'s thirty-day notice provision remains in effect. *See, e.g.*, *Sherwood Auburn LLC v. Pinzon*, 521 P.3d 212, ¶ 8 (Wash. Ct. App. 2022) (under § 9058(c), landlords must "provide a clear 30-day notice to pay rent or vacate the premises"); *Arvada Vill. Gardens LP v. Garate*, 529 P.3d 105, ¶ 13 (Colo. 2023) (notice provision of § 9058(c) still in effect because it "includes no expiration date"); *D.H. v. Common Wealth Apartments*, 231 N.E.3d 284, 288 (Ind. Ct. App. 2024); *Olentangy Commons Owner LLC v. Fawley*, 228 N.E.3d 621, ¶ 43 (Ohio Ct. App. 2023). But even among those courts, disagreement remains as to whether the thirty-day period provides defaulting tenants an opportunity to cure rental nonpayment or merely an extended time to vacate the rental property. *Compare Sherwood*, 521 P.3d 212, ¶¶ 8, 16-17, 28 (thirty days to cure) *with*, *Woodrock River Walk LLC v. Rice*, 906 S.E.2d 682, 685-86 (Va. Ct. App. 2024) (during thirty days after notice, landlord may file eviction action). And a minority of states have concluded that § 9058(c)'s notice provision has expired. *MIMG CLXXII Retreat on 6th, LLC v. Miller*, 16 N.W.3d 489, 501 (Iowa 2025); *see also* Utah Code Ann. § 78B-6-802(5)(c) (West 2020) (§ 9058(c)'s notice requirement "applies only when delinquent rent or other amounts have accrued during the 120-day moratorium" period).

¶15 We conclude the better reading is that the notice requirement has expired. Section 9058(c) is necessarily tethered to its larger statutory scheme and governs only notices to vacate for nonpayment of rent that became delinquent during the eviction moratorium set forth in § 9058(b).

¶16 This interpretation, notably, avoids reading § 9058(c)(1) in a manner that would represent a significant and ongoing federal intrusion into an area that has long been reserved for state law. *See Bond v. United States*, 572 U.S. 844, 848 (2014) (courts generally "decline[] to read federal law as intruding" in areas principally governed by state statute unless

Congress clearly states intent to override state law); *see also Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991). Even though the intrusion would be limited to properties subject to federally subsidized housing regulations covered by the CARES Act, eviction laws have long been a matter left to the states, regardless of federal subsidy. *See Ala. Ass'n of Realtors*, 594 U.S. at 764 (reasoning that "the landlord-tenant relationship" is "an area that is the particular domain of state law"). There is a good reason to favor an interpretation that declines to read so novel an intrusion upon state sovereignty into an isolated and ambiguous clause buried in the middle of a temporary measure for emergency relief. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) (given two plausible interpretations, courts "have a duty to accept the reading that disfavors pre-emption").

¶17        Our interpretation is also consistent with the legislative purpose of § 9058, which aimed "[t]o protect renters experiencing COVID-19 pandemic-related financial hardships" and which was enacted alongside numerous provisions aimed at mitigating economic harms during the pandemic. Katie Jones et al., Cong. Rsch. Serv., CRS R45710, Housing Issues in the 116th Congress 12 (2021). To interpret subsection (c)(1) as standing alone, applying a thirty-day notice requirement indefinitely to eviction actions of all kinds, as Barrera urges, would stretch the application of § 9058(c) in particular and the CARES Act in general well beyond that purpose. *See Unemployed Workers United v. Ducey*, 254 Ariz. 95, ¶ 13 (App. 2022) ("The pandemic represented a hard stop on our state's economy."). The forced closures that prevented American citizens from working and collecting paychecks during the pandemic were not indefinite, and neither were the measures Congress implemented to alleviate the harms those closures caused. *See id.* ¶¶ 11-12 (contrasting pandemic unemployment benefits provided by CARES Act, enacted "to triage the economic catastrophe sparked by the COVID-19 pandemic," to permanent changes in benefits); *see also Holcomb v. T.L.*, 175 N.E.3d 1177, 1179 (Ind. Ct. App. 2021) ("The programs under the CARES Act were envisioned as temporary measures from their inception.").

¶18        Read in context, § 9058(c) provided a pathway for how landlords could proceed upon the expiration of the moratorium on filing eviction actions set forth in subsection (b). After the moratorium, under subsection (c)(2), landlords were again permitted to issue notices to those tenants whose rental payments lapsed during the moratorium to vacate. Subsection (c)(1) provided an additional protection to tenants in the form of a thirty-day holdover, so that even those tenants whose rent had lapsed during the moratorium had extra time before they were required to vacate

their homes. The subsection explained to both landlords and tenants how the process of moratorium-related evictions would proceed after the moratorium ended.

¶19 Because Barrera's nonpayment occurred well after the temporary moratorium had ended, the thirty-day notice period in § 9058(c)(1) does not apply to Sedona Pointe's eviction notice. And in any event, Barrera would not be entitled to relief under § 9058(c) even if it did. Sedona Pointe's notice informed Barrera that if she failed to cure her nonpayment within five days, she had thirty days from the date of the notice to vacate the property, consistent with the thirty-day requirement from § 9058(c) rather than the five-day notice provided in Arizona law. *See* § 33-1368(B). Sedona Pointe then filed the eviction action thirty-four days after issuing the notice. Well over thirty days had passed, therefore, before Barrera was required to vacate.

¶20 Barrera relies on Washington case law to urge that § 9058(c)(1) entitled her to a thirty-day period not only to vacate, but to cure her nonpayment of rent. *See Sherwood*, 521 P.3d 212, ¶¶ 8, 16-17, 28. Nothing about the plain language of § 9058(c)(1) establishes a right to cure. It states only that a landlord "may not require the tenant to vacate" within thirty days of the notice. *Id.* The *Sherwood* court reasoned that "the notice provision would be rendered meaningless" under Washington law if a tenant was unable to cure during the thirty-day period defined in subsection (c)(1). 521 P.3d 212, ¶ 17. There is no such inconsistency under Arizona's scheme. *See, e.g.*, RPEA 14(b)(1) (providing that Arizona landlord may request a writ of restitution only after obtaining "judgment for possession in an eviction action"). Subsection (c)(1) extends a tenant's right of possession to thirty days after the notice. That extension would be meaningful with or without a right to cure.

¶21 For the same reason, we also reject Barrera's argument that her due process rights were violated because Sedona Pointe's notice failed to inform her of a right to cure within the thirty-day notice period. Section 9058(c) does not provide a separate right for a tenant to cure rental nonpayment outside the five-day period set forth in § 33-1368(B). The notice Barrera received reasonably apprised her that she had breached the rental agreement, that her landlord intended to initiate eviction proceedings, and that she had five days in which to cure her nonpayment. Due process requires nothing more. *See Blair v. Burgener*, 226 Ariz. 213, ¶ 19 (App. 2010) ("Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the

action and afford them an opportunity to present their objections.'" (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950))); *see also* A.R.S. § 33-1305(C) (prohibiting "mandatory or technical form for providing notice" in special detainer actions, so long as notice contains "statutory requirements for content and formatting").

**Disposition**

¶22        We grant special-action jurisdiction but deny relief.